# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Jose L.B.,

        Petitioner,

v.

Bondi,

        Defendant.

Case No. 26-cv-2119-KMM-EMB

**REPORT AND
RECOMMENDATION**

---

Before me is Petitioner Jose L.B.'s[1] petition for a writ of habeas corpus (Dkt. No. 1) under 28 U.S.C. § 2241. Jose requests to be released on the ground that his detention violates the Immigration and Nationality Act ("INA"), the due process clause of the Fifth Amendment, the Fourth Amendment, and certain statutes and regulations. The Government filed a response (Dkt. No. 6), and Jose filed a reply (Dkt. No. 7).

The petition was referred to me to issue a Report and Recommendation. I recommend that the petition be GRANTED and that the Court order the Government to release Jose from custody immediately.

---

[1] This District uses the first name and last initials of nongovernmental parties in immigration cases.

## I.    Background.

Jose is a citizen of Guatemala.  (Pet., ¶ 50.)  Around 2022 or 2023, he entered the United States without inspection as an unaccompanied minor and was apprehended by immigration authorities.  (*Id.* ¶¶ 50–51; *see also* Campbell Decl., Ex. A (Dkt. No. 4-1) at 2.)

As a general manner, immigration authorities refer unaccompanied immigrant minors at the border to the Office of Refugee Resettlement ("ORR"), a program in the Department of Health and Human Services.  *See J.D. v. Azar*, 925 F.3d 1291, 1300–01 (D.C. Cir. 2019).  "ORR bears responsibility for the 'care and placement'" of unaccompanied immigrant minors.  *Id.* (quoting 6 U.S.C. § 279(b)(1)(A) and citing U.S. Dep't of Health & Human Servs., ORR, Unaccompanied Alien Children Program Fact Sheet 1–2 (March 2019), https://www.hhs.gov/sites/default/files/UnaccompaniedAlien-Children-Program-Fact-Sheet.pdf).

That's what happened here.  When he entered, Jose was briefly detained by immigration authorities before being transferred to ORR, which in turn released him to the care of his uncle.  (Campbell Decl., Ex. A at 2.)

According to the Government, Jose was "processed" for a Notice to Appear—the charging document that initiates removal proceedings—when he entered.  (Campbell Decl., Ex. A at 2.)  *See Pinos Gonzalez v. Barr*, 929 F.3d 595, 597 (8th Cir. 2019).  But immigration authorities failed to file the Notice

to Appear in immigration court, known as the Executive Office for Immigration Review ("EOIR").  (Campbell Decl., Ex. A at 2.)  Thus, Jose was never placed in removal proceedings.

Jose is now an adult.  Since his release from ORR custody, he lived in Faribault, Minnesota.  (Pet., ¶ 50.) Outside of petty misdemeanor traffic violations, he has no criminal record.  (*Id.*, ¶ 53.)

A few weeks ago, ICE issued an administrative warrant for Jose's detention under INA §§ 236(a) and 287, codified as 8 U.S.C. §§ 1226(a) and 1357.  (Campbell Decl., Ex. B (Dkt. No. 4-2) at 1).  *See Inaldo L. v. Noem*, No. 26-cv-142-ECT-SGE, 2026 WL 161322, at *1 (D. Minn. Jan. 21, 2026) (recognizing that INA § 236 "is codified under 8 U.S.C. § 1226").  The warrant is dated March 27, 2026.  (Campbell Decl., Ex. B at 1.)  A certificate of service states that the warrant was served on Jose at Rice County Jail (*id.*), although the Government's Record of Deportable/Inadmissible Alien, Form I-213, states that the ICE arrested Jose at Olmstead County Jail and transported him to Freeborn County Jail. (Campbell Decl., Ex. A at 2.)  The certificate says that the warrant was read to Jose in Spanish, although the word "null" is written in the space provided for the interpreter's name.  (Campbell Decl., Ex. B at 1.)  The warrant was signed by Immigration Officer Joshua A. Holein; an officer with the first initial "W." signed the certificate of service. (*Id.*)

3

In his Petition, Jose alleges immigration authorities detained him "on or about March 26." (Pet., ¶ 52.)  He states the Government "did not present an administrative warrant to Petitioner when they detained him" and hadn't produced one as of the Petition's filing.  (*Id.*, ¶ 54; *see also id.*, ¶ 98.)

## II.    Legal Framework.

"U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)."  *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018).

Under 8 U.S.C. § 1226(c), the Government must detain certain non-citizens who are inadmissible or deportable because they have committed or were sentenced for certain criminal offenses.  The Government doesn't argue that Jose has committed any of these offenses or that § 1226(c) applies here.

Under 8 U.S.C. § 1226(a), "on a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."  Excepting individuals detained under § 1226(c), § 1226(a) permits the Attorney General to "release the alien on . . . bond of at least $1,500 . . . or . . . conditional parole."  8 U.S.C. § 1226(a)(2).  This is the provision that the Government invoked in its warrant for Jose's detention.  (Campbell Decl., Ex. B at 1.)

4

Section 1225 is different.  It applies to "an alien present in the United States who has not been admitted or who arrives in the United States []whether or not at a designated port of arrival" and who is "deemed for purposes of this chapter an applicant for admission."  8 U.S.C. § 1225(a)(1). "Applicants for admission must 'be inspected by immigration officers' to ensure that they may be admitted into the country consistent with U.S. immigration law."  *Jennings*, 583 U.S. at 287 (quoting 8 U.S.C. § 1225(a)(3)).

Applicants for admission under § 1225 "fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)."  *Id.*

Section 1225(b)(1) applies to noncitizens deemed inadmissible due to fraud, misrepresentation, lack of valid documentation, as well as to "certain other aliens designated by the Attorney General in his discretion."  *Id.* (citing 8 U.S.C. § 1225(b)(1)(A)(i), (iii)).  No one argues that § 1225(b)(1) applies here.

"Section 1225(b)(2) is broader"—it "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)," with specific exceptions.  *Id.* (citing §§ 1225(b)(2)(A), (B)).  "Aliens covered by § 1225(b)(1) are normally ordered removed 'without further hearing or review' pursuant to an expedited removal process" unless they "indicate[] either an intention to apply for asylum . . . or a fear of persecution," in which case they are referred for an asylum interview.  *Id.* (quoting § 1225(b)(1)(A)(ii)).  "In the case of an alien who is an applicant for admission,

5

if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added); *see Jennings*, 583 U.S. at 287–88. Thus, unlike § 1226(a)'s discretionary framework, § 1225(b)(2) mandates detention.

Unaccompanied minors who, like Jose, are from non-contiguous countries and whom ORR has released to sponsors may not be subjected to the expedited removal process under § 1225(b)(2), but instead "are entitled to greater procedural protections." *J.D.*, 925 F.3d at 1302 (citing 8 U.S.C. §§ 1229a & § 1232(c)(5)). Thus, Jose would not have been subject to detention under § 1225(b)(2) when he entered the United States three years ago. I turn now to the question whether § 1225(b)(2) authorizes his present detention.

## III.   Discussion.

A district court has the power to provide habeas relief to an individual whose immigration-related detention violates the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3)(a)(c) (generally authorizing courts to grant habeas relief); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020). The petitioner bears the burden of proving by a preponderance of the evidence that his detention is unlawful. *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154 (D. Minn. 2025).

## A. Controlling detention authority.

Jose argues that his immigration detention violates the INA, substantive and procedural due process under the Fifth Amendment, the Fourth Amendment's protection against unlawful seizure, the Administrative Procedure Act, and the *Accardi* doctrine as applied to various regulations. Jose requests immediate release from detention.

Despite detaining Jose pursuant to a warrant invoking the discretionary detention provision of 8 U.S.C. § 1226, the Government now argues that Jose is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). The Government relies on *Avila v. Bondi,* 170 F.4th 1128 (8th Cir. 2026). But *Avila* is factually distinct from this case.

In *Avila*, a Mexican citizen entered the United States without inspection. *See id.* at 1132. Based on my review of the district court docket, it appears that—unlike here—Avila was not initially detained or released on an order of recognizance when he entered, nor was he an unaccompanied minor when he entered. Years later, immigration authorities detained him and issued a notice to appear, thereby initiating removal proceedings against him. *Id.* Nothing in the district court docket indicates that he was detained pursuant to a warrant issued under § 1226.

7

Avila petitioned for release or a bond hearing under § 1226(a). *Avila*, 170 F.4th at 1132. The Government argued that he was ineligible for relief because he qualified as an arriving alien seeking admission under § 1225(b)(2). *See id.* A divided panel of the Eighth Circuit agreed with the Government, reversing the district court's decision. *Id.* at 1138. The panel majority interpreted § 1225(b)(2)(A) as requiring detention of any noncitizen present in the United States who has not been admitted—regardless of whether they arrived at the border recently or had long been present within the interior—if an examining officer determines that the noncitizen "is not clearly . . . entitled to be admitted." *Id.* at 1134–35.

The Government argues that *Avila* controls here because Jose entered without inspection, was not admitted, and is not clearly entitled to admission. It thus contends that he is mandatorily detained under § 1225(b)(2).

The problem with the Government's argument is that the documents it filed in ostensible support of its response tell a different story. The Government claims that within 48 hours of detaining Jose, it served him with an administrative arrest warrant (Form I-200), a Notice to Appear, a notice of rights and request for Disposition, and a list of free legal services. (Gov't Resp. at 2 (citing Campbell Decl., Exs. A & B), 14.) Of these documents, the Government filed only the arrest warrant as part of this record. (*See* Campbell Decl., Ex. B at 1.)

The arrest warrant invokes *§ 1226* (referred to as INA § 236 in the document) as the statutory authority for detaining Jose.  (Campbell Decl., Ex. B at 1.)  *See Inaldo L.*, 2026 WL 161322, at *1.  Thus, the factual basis for detention that the Government first articulated was not § 1225(b)(2), but § 1226.  And because the Government has not claimed that it's detaining Jose under § 1226(c) (nor could it do so based on Jose's lack of criminal record), the authority it invokes here necessarily is the discretionary detention provision, § 1226(a).

"An agency must defend its actions based on the reasons it gave when it acted."  *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 24 (2020); *see also Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983) ("An agency's action must be upheld, if at all, on the basis articulated by the agency itself."); *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (explaining that the court "must judge the propriety of [administrative agency] action solely by the grounds invoked by the agency").  And "courts may not accept . . . counsel's post hoc rationalizations for agency action."  *Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. 50.  Indeed, this is a "'foundational principle of administrative law.'"  *Dep't of Homeland Sec.*, 591 U.S. at 20 (quoting *Michigan v. EPA*, 576 U.S. 750, 758 (2015)).  That's because, "when so much is at stake, the Government should turn square corners in dealing with the people."  *Id.* at 24.

I recommend holding the Government to its initial representation that it detained Jose under § 1226(a) and rejecting its later arguments that detention is pursuant to § 1225(b)(2).  *See Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 486 (S.D.N.Y. 2025) (rejecting Government's position, "adopted post hoc and raised for the first time in this litigation," that it detained petitioner under § 1225(b)(2)); *Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 969–70 (D. Minn. 2025) (same); *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 782–83 (E.D. Mich. 2025) (same); *see also Adonay A.R.R. v. Bondi*, No. 26-cv-1071-JWB-DJF (D. Minn. Feb. 9, 2026) (stating Government may not simply "toggle between [the] detention regimes" set forth in §§ 1225 and 1226 as they are "not . . . interchangeable sources of detention authority.").  Because the Government invoked its authority under § 1226, *Avila* does not control here.

**B. Remedy.**

The next question is whether the appropriate remedy is an opportunity for a bond hearing or conditional parole, or, on the other hand, immediate release, as Jose requests.  Under § 1226(a), if an immigration officer decides to detain someone pursuant to a warrant, the person may seek review of that decision at a bond hearing before an Immigration Judge.  8 C.F.R. §§ 236.1(c)(8) & (d)(1).  Jose apparently hasn't received a bond hearing.  The normal course would thus be to order the Government to provide one.

10

But there is a complication. Jose points out deficiencies in the arrest warrant (Form I-200) that he says invalidate it. (Pet'r Reply at 5–7.)

First, Jose asserts that he was arrested "on or about March 26" and that he was not served with a warrant upon arrest. (Pet., ¶¶ 52, 54.) The warrant supplied by the Government in this record is dated March 27, a day later. (Campbell Decl., Ex. B at 1.)

Second, the warrant lists the place of service as Rice County, Minnesota. (*Id.*) But the I-213 contradicts that, stating that ICE arrested Jose at Olmstead County, not Rice County. (*Id.*, Ex. A at 2.)

Third, the certificate of service says the warrant was read to Jose in Spanish, but the word "null" appears in the interpreter signature line. (*Id.*, Ex. B at 1.)

Jose argues that these discrepancies demonstrate that the warrant was not timely or properly issued or served, rendering it invalid and supporting immediate release instead of a bond hearing. (Pet'r Reply at 5–7.)

The Government's declaration accompanying the warrant does nothing to address these deficiencies. The declaration is signed by Deportation Officer Christopher Campbell, whose name does not appear on the warrant itself. (Campbell Decl. at 2.) Campbell does not address the date and location discrepancies or provide any information about when the warrant was created or how, when, and by whom it was served and interpreted.

11

Instead, Campbell just avers that "the Form/s I-200, and I-213 were made by an employee of DHS/ICE who obtained information from immigration officers, Petitioner, and law enforcement information sources regularly maintained in the ordinary course of business by DHS/ICE," consistent with their "regular practice." (*Id.*)  The Government thus implies that the Court should apply a presumption of regularity to the warrant.

But even if the Government made a presumption-of-regularity argument explicitly (it doesn't) or provided authority to support it (also doesn't), I would find the factual discrepancies and lack of explanation for them overcome the presumption and support finding the warrant invalid.  *Cf. Varela Martinez v. Warden of Miami Corr. Facility*, No. 25-cv-1057 DRL-SJF, 2026 WL 322742, at *3 (N.D. Ind. Feb. 6, 2026) (applying presumption of regularity to administrative warrant "when the record tends to substantiate timeliness of the warrant and there nothing "inherently unusual" about it).

Indeed, this District repeatedly has found warrants with similar facial errors invalid.  *See Ruallamd L. v. Bondi*, No. 26-cv-1279-PJS-EMB (D. Minn. Feb. 19, 2026) (finding that warrant that was issued on arrest date but that bore illegible signature, blank interpreter's signature line, and apparently inadequate basis for probable cause was insufficient to establish that petitioner was arrested pursuant to the warrant when neither the signatory nor anyone else with personal knowledge attested to the facts surrounding

12

the warrant's preparation and execution); *Enyer O.L. v. Bondi*, 26-cv-1078-MJD-SGE (D. Minn. Feb. 15, 2026) (finding that warrant contained discrepancies that were "not insignificant" and that the Government "hardly meaningfully addressed" and ordering immediate release); *Jose R.M.M. v. Bondi*, No 26-cv-1165-JRT-DTS (D. Minn. Feb. 13, 2026) (ordering immediate release when warrant contained significant omissions and Government did not attest to the warrant's validity or identify the officers who issued and obtained it).

Similarly, this District has found post-hoc warrants insufficient to support continued detention under § 1226(a). *See, e.g., Alberto C.M. v. Noem*, Case No. 26-cv-380-DWF-SGE (D. Minn. Jan. 23, 2026) (finding no authority to continue detention where warrant was issued after the petitioner's arrest and detention).

Like in these cases, I recommend finding that the warrant here is invalid based on its facial errors and discrepancies.

Further, although the Government claims three times in its response brief that it served Jose a Notice to Appear for removal proceedings, it failed to file that document as part of this record. (Gov't Resp. at 2, 13–14.) And it acknowledges that the Notice to Appear for which Jose was "processed" when he first entered the United States as an unaccompanied minor was never filed in EOIR, the Immigration Court. (Campbell Decl., Ex. A at 2.)

13

In *Castanon Nava v. Dep't of Homeland Sec.*, the Northern District of Illinois determined that ICE lacks authority to issue I-200 administrative warrants without "concurrent or prior issuance of a Notice to Appear." 806 F. Supp. 3d 823, 853 (N.D. Ill. 2025). At least two courts in this District have relied on *Castanon Nava* to find warrants invalid when no corresponding Notice to Appear was filed. *See e.g., Oscar R.R.G. v. Bondi*, Case No. 26-cv-1204-JRT-SGE (D. Minn. Feb. 13, 2026); *Enyer O.L.*, Case No. 26-cv-1078-MJD-SGE (D. Minn. Feb. 15, 2026) (same).

I recommend that this Court, too, find that the lack of a corresponding Notice to Appear invalidates the warrant.

When, as here, the Government (1) "erroneously assert[s] that a detainee is being held pursuant to § 1225(b)" having previously articulated § 1226 as its basis for detention and (2) "ha[s] not produced a valid warrant to effectuate an arrest pursuant to § 1226(a), the appropriate remedy is release from custody." *Jose R.M.M.*, No 26-cv-1165-JRT-DTS (D. Minn. Feb. 13, 2026) (citing cases). I therefore recommend that this Court order the Government to release Jose immediately and promptly to file an update on the docket showing that he was released.[2]

---

[2] Should the Government argue that finding the warrant invalid also invalidates the Government's reference to INA § 236 (that is, 8 U.S.C. § 1226) as the basis for detention, thus converting Jose's arrest to a § 1225 detention, I disagree. As stated above, the Government articulated its basis for

Because I find that this was an arrest pursuant to § 1226(a) and that the accompanying warrant is invalid, requiring immediate release, I do not reach Jose's remaining constitutional or regulatory arguments.

## IV.   Recommendation.

For the foregoing reasons, and upon careful consideration of the entire record, IT IS HEREBY RECOMMENDED that:

1.   Petitioner's petition for a writ of habeas corpus be GRANTED;

2.   The Government be ORDERED immediately release Petitioner;

3.   The Government be ORDERED promptly to file an update on the docket showing that such release has taken place.

Date: April 28, 2026

*s/ Elsa M. Bullard*

Elsa M. Bullard
United States Magistrate Judge

---

detention and is bound by that.  Whether the warrant in which it articulated that basis is otherwise defective does not alter the Government's original representation.  The Government chose a basis for its arrest of Jose—§ 1226. Indeed, according to Jose, it chose this basis after it had already picked him up.  Failing to properly serve the warrant or identify where the arrest occurred does not alter the Government's stated legal basis for Jose's detention.

15

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under D. Minn. LR 72.2(b)(1), "[a] party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy of the recommended disposition, *unless the court sets a different deadline.*" (Emphasis added.) The Court modifies the deadline such that objections are due on or before May 4, 2026. Responses to objections are due on or before May 7, 2026. All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).